UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                              )
SUPERVISION,                  )
      Plaintiff,              )
                              )
           v.                 )          04-CV-12631-MEL
                              )
COLOR KINETICS, INC.,         )
      Defendant.              )
                              )
```

MEMORANDUM AND ORDER

LASKER, D. J.

Color Kinetics, Inc. ("CK") moves to dismiss the Complaint in this patent case on the grounds that Super Vision ("SV"), as a non-exclusive licensee, lacks standing to maintain this infringement action.

I. Background

On March 3, 2004, SV executed an Assignment and License-Back Agreement ("the Agreement") with a third-party company, High End Systems, Inc. ("HES"). Under the Agreement, SV purportedly acquired U.S. Pat. No. 4,962,687 ("the '687 patent") from HES, the original assignee of the '687 patent. The partial consideration for this assignment was $15,000.00.

The Agreement includes a number of provisions by which HES retains substantial rights in the '687 patent, specifically: (1) HES retains a "non-exclusive, irrevocable, royalty-free right and license" to make, use, and sell products within the scope of

1

the claims of the patent that is not limited geographically or otherwise (Ex. A, § 2.2); (2) a HES licensee of the '687 patent called Altman Lighting ("Altman") remains a licensee of HES; that license was not transferred to SV and the royalties will continue to accrue to HES (Ex. A, § 2.3); and (3) HES reserves the right to enforce the '687 patent, meaning the right to assert claims of infringement against licensee Altman (Ex. A, § 5).

The Agreement also includes a number of "restrictions on the HES assignment", in particular: (1) HES retains control over ownership of the '687 patent because SV cannot assign the '687 patent without written consent from HES (Ex. A, § 3.2); (2) HES retains control over licensing of the '687 patent because SV "shall not be entitled to grant a License to a third party under the HES Assigned Patent and will not grant a license to a third party under the ['687 patent] without first receiving written authorization from HES" (Ex. A, § 3.1); (3) SV cannot license or assign the patent to CK specifically without consent and without first obtaining from CK a reciprocal license agreement for the CK patents that is "mutually and equally beneficial for both SV and HES" (Ex. A, § 3.2); and (4) if a lawsuit is filed against CK, "HES will give written authorization for [SV] to license the ['687 patent] to [CK] if and only if, in exchange for such License to [CK], both SV and HES receive a license...under the [CK] patents [that is] mutually and equally beneficially for both

[Super Vision] and HES". (Ex. A, § 3.2).

Under the Agreement, HES also retains a contingency interest in any litigation over the '687 patent. Specifically, should SV recover damages from CK for infringement occurring before the effective date of the agreement, HES is entitled to one third of the recovery amount after SV's legal costs and expenses, up to $500,000.00, have been deducted. (See Ex. A, § 3.)

## II. Analysis

To have standing to bring an action for patent infringement, a party must be either the patentee, a successor in title to the patentee, or an exclusive licensee of the patent at issue. See Mentor H/S, Inc. v. Med. Device Alliance, Inc., 240 F.3d 1016, 1017 (Fed. Cir. 2001). Ownership of a patent is transferred when all substantial rights have been assigned. Abbott Laboratories v. Diamedix Corp., 47 F.3d 1128, 1131 (Fed. Cir. 1995). Whether an agreement transfers sufficient rights to shift ownership and makes the agreement a legal assignment rather than merely a license depends on the substance of the transaction and the intention of the parties. Factors to be considered include: (a) whether the grantor or others retain the right to make, use, or sell the patented invention and, if so, in what geographical area or markets; (b) whether the grantee was given the exclusive right to enforce the patent and how much, if any,

3

control over enforcement proceedings is retained by the grantor; (c) whether the grantee is free to assign the patent; and (d) whether the grantee is free to license the patent.  Fieldturf, Inc. v. Southwest Recreational Indus., Inc., 357 F.3d 1266, 1269-70 (Fed. Cir. 2004).

As measure by these standards, the Agreement's provisions and the parties' intentions establish that the Agreement does not confer all substantial rights in the '687 patent upon SV.

First, HES retains the right to practice the invention without accounting to SV.  HES' right to practice the invention is royalty-free, permanent, and unlimited geographically, meaning that HES can compete with SV by selling products covered by the patent in any area and in any market. (See Ex. A, § 2.2.)  The retention of such a right is substantial.  See, e.g., Fieldturf, 357 F.3d at 1269 ("[A] licensor's retention of a limited right to develop and market the patented invention indicates that the licensee failed to acquire all substantial rights.").

Second, Altman retains the right to practice the invention without accounting to SV.  This cuts against the notion that SV is the owner of the '687 patent, because Altman can continue to practice the invention without SV's permission, without payment of royalties to SV, and without being subject to suit.

4

Third, the existing license from HES to Altman survives the Agreement, and Altman will continue to pay royalties to HES. This demonstrates that HES is still the owner of the '687 patent. See, e.g., Abbott, 47 F.3d at 1132-33 (finding a lack of standing in part because the transfer was subject to a pre-existing license).

Fourth, SV does not control enforcement of the patent. Under the Agreement, SV does not have the right to enforce the patent with respect to HES' existing licensee, Altman.  Instead, HES retains the right to enforce the patent against Altman. Further, HES also retains an approval right for any settlement, as well as a right to require SV to negotiate a license from CK, on behalf of HES, as part of any settlement.  These provisions manifest an intent by HES to continue to exploit the patent and maintain control over it.  Such an intent is inconsistent with an assignment of all the substantial rights in the patent.  (Ex. A, § 3.1); see Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc., 248 F.3d 1333, 1344 (9th Cir. 2001).

Fifth, SV's right of alienation is limited.  The Agreement provides that SV "shall not be entitled to assign the '687 patent to a third party and will not assign the '687 patent to a third party without first receiving written authorization from HES." (Ex. A, § 3.1).  The retention of that right by HES

5

weighs heavily against a finding that SV is the owner of the '687 patent.  See, e.g., Abbott, 47 F.3d at 1132-33; Intellectual Property Development, 248 F.3d at 1337.

Sixth, SV's right to license the patent is limited. Under the Agreement, SV cannot grant a license to the '687 patent "without first receiving written authorization from HES." (Ex. A, § 3.1.)  Moreover, the Agreement provides that SV cannot settle any lawsuit that it has brought against CK for infringement of the '687 patent with a cross-license unless HES also gets a royalty-free license to the CK patents.

Finally, HES retains the right to share in the proceeds of litigation relating to the patent.  Under the Agreement, HES retains the right to recover one-third of any royalties recovered in an infringement suit occurring prior to the date of the Agreement.  This also undermines the notion that SV is the owner of the '687 patent.

Weighing these factors together, it is clear that SV is merely a licensee and did not acquire ownership of the '687 patent under the Agreement.  The cases relied upon by SV offer little support for its position to the contrary.  In Vaupel Textilmschinen KG v. Meccanica Euro Italia S.P.A., 994 F.2d 870 (Fed. Cir. 1991), the Federal Circuit held that an agreement transferring certain patent rights from Markowsky to Vaupel constituted an assignment of all substantial rights.  Under the

6

agreement, Markowsky retained a veto right on sublicensing by Vaupel; the right to obtain patents on the invention in other countries; a reversionary right to the patent in the event of bankruptcy or termination of production by Vaupel; and a right to receive infringement damages. Id. at 875. The Vapuel court found particularly dispositive the agreement provision transferring the right to sue for infringement of the patent.

Although, at first blush, the facts of Vaupel appear similar to the case at bar, HES actually retains many more rights than Markowsky, including: (1) the unlimited right to practice the invention; (2) the right to have Altman practice the invention; (3) the right to receive royalties from Altman; (4) the right to sue Altman under its own name; and (5) the right to prevent assignment by SV. The cumulative effect of HES retaining this bundle of additional rights distinguishes the instant case from Vaupel. See, e.g., Intellectual Property Development, 248 F.3d at 1342. The result in Vaupel was reached because the retained rights did not "substantially interfere with the full use by Vaupel of the exclusive rights under the patent." Vaupel, 944 F.2d at 875. In contrast, the fact that multiple other parties retain unlimited rights to practice the invention without payment to SV clearly interferes with the full use of exclusive rights. The additional rights retained by HES lead to the conclusion that all substantial rights were not assigned to SV.

7

Because both HES and Altman retain the right to practice the invention of the '687 patent without accounting to SV, and because those rights are not limited, SV has neither the exclusive right to practice the '687 patent nor is it an exclusive licensee of the '687 patent.  See Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1552 (Fed. Cir. 1995)("To be an exclusive licensee for standing purposes, a party must have received, not only the right to practice the invention within a given territory, but also the patentee's express or implied promise that others shall be excluded from practicing the invention within that territory as well.").  As a bare licensee, SV lacks standing to sue for infringement.  Abbott, 47 F.3d at 1131("A bare licensee...has no legally recognized interest that entitles it to bring or join an infringement action.").

Upon this analysis of the law, I find that HES's purported assignment of the '687 patent to SV did not transfer all substantial rights, and that SV lacks standing to bring this suit.  Accordingly, CK's motion to dismiss the Complaint is GRANTED.

SV's application that the motion to dismiss be granted without prejudice is denied.  Of course, SV may always seek revision of the Agreement with HES.  If the Agreement is revised, SV may seek whatever relief it may be entitled to under the revised Agreement.

8

It is so ordered.


Dated:     September 13, 2005
           Boston, Massachusetts     /s/ Morris E. Lasker
                                        U.S.D.J.